WNI 19-024895
Shapiro & DeNardo, LLC
14000 Commerce Parkway, Suite B
Mount Laurel, NJ 08054
(856)793-3080
Krystin M. Kane - 171402015
Kathleen M. Magoon - 040682010
Donna L. Skilton - 013072007
Charles G. Wohlrab - 016592012
Courtney A. Martin - 098782016
Elizabeth L. Wassall - 023211995
Jeffrey Rappaport - 003431991
Kristen D. Little - 017411997
ATTORNEYS FOR WELLS FARGO BANK, N.A.

| | |
|---|---|
| IN RE: | UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY |
| JORGE L PADILLA, SR. AND<br>MARTHA LEE PADILLA DBA<br>MARTHA LEE PADILLA, DEBTORS | CASE NO.: 18-35404-KCF<br>CHAPTER 7 |

### NOTICE OF MOTION TO VACATE THE AUTOMATIC STAY

TO:  Lee Martin Perlman, Attorney for Debtors
    1926 Greentree Road
    Suite 100
    Cherry Hill, NJ 08003

    Thomas Orr, Trustee
    Law Office of Thomas J. Orr
    321 High Street
    Burlington, NJ 08016

    Jorge L Padilla, Sr., Debtor
    724 Leeward Avenue
    Beachwood Bor, NJ 08722

    Martha Lee Padilla dba Martha Lee Padilla, Debtor
    724 Leeward Avenue
    Beachwood Bor, NJ 08722

Wells Fargo Bank, N.A. has filed papers with the court requesting relief from the Automatic Stay.

Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one.)

If you do not want the court to grant relief from the Automatic Stay to Wells Fargo Bank, N.A. with regard to your property located at Lot 11 Block 3.11 Commonly known as 724 Leeward Avenue, Beachwood, New Jersey 08722 or if you want the court to consider your views on the motion, then on or before ____March 5, 2019_____, you or your attorney must:

File a written response in opposition to this motion explaining your position and send to:

Clerk of the United States Bankruptcy Court
Clarkson S. Fisher US Courthouse
402 East State Street
Trenton, NJ 08608

If you mail your response to the court for filing, you must mail it early enough so the court will receive it on or before the date stated above.

You must also mail a copy to:

Charles G. Wohlrab, Esquire
Shapiro & DeNardo, LLC
14000 Commerce Parkway, Suite B
Mount Laurel, NJ 08054

Thomas Orr, Trustee
Law Office of Thomas J. Orr
321 High Street
Burlington, NJ 08016

Additionally, you must attend the hearing scheduled for ___March 12, 2019___, at ___10:00 am___ in Courtroom _____,

United States Bankruptcy Court
Clarkson S. Fisher US Courthouse
402 East State Street
Trenton, NJ 08608

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter an order granting that relief.


Date: ___2/15/19___          Signature   /s/ Charles G. Wohlrab
                                          Charles G. Wohlrab, Esquire
                                          Shapiro & DeNardo, LLC
                                          14000 Commerce Parkway, Suite B
                                          Mount Laurel, NJ 08054

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-2(c)**

WNI 19-024895
Shapiro & DeNardo, LLC
14000 Commerce Parkway, Suite B
Mount Laurel, NJ 08054
(856)793-3080
Christopher A. DeNardo - 250782017
Krystin M. Kane - 171402015
Kathleen M. Magoon - 040682010
Donna L. Skilton - 013072007
Charles G. Wohlrab - 016592012
Courtney A. Martin - 098782016
Elizabeth L. Wassall - 023211995
Jeffrey Rappaport - 003431991
Kristen D. Little - 017411997
ATTORNEYS FOR WELLS FARGO BANK, N.A.

| | |
|---|---|
| IN RE: | CASE NO.: 18-35404-KCF |
| JORGE L PADILLA, SR. AND MARTHA LEE PADILLA DBA MARTHA LEE PADILLA, DEBTORS | JUDGE: HONORABLE KATHRYN C. FERGUSON |
| | Chapter: 7 |

## ORDER VACATING STAY

The relief set forth on the following pages, numbered two (2) through two (2) is hereby ORDERED.

Upon the motion of SHAPIRO & DENARDO, LLC, Attorneys for WELLS FARGO BANK, N.A. under Bankruptcy Code section 362(d) for relief from the Automatic Stay as to certain real property as hereinafter set forth, and for cause shown,

1.  It is ORDERED that the Automatic Stay of Bankruptcy Code section 362(a) is vacated to permit the movant to institute or resume and prosecute to conclusion one or more action(s) in the court (s) of appropriate jurisdiction to foreclose mortgage(s) held by the movant or alternatively to allow movant to pursue alternatives to foreclosure upon the following:

_____    Land and premises commonly known as Lot 11 Block 3.11 Commonly known as 724 Leeward Avenue, Beachwood, New Jersey 08722.

2.  It is ORDERED that the movant, its successors or assignees, may proceed with its rights and remedies under the terms of the subject mortgage and pursue its state court remedies including, but not limited to, taking the property to sheriff's sale, in addition to potentially pursing other loss mitigation alternative, including, but not limited to, a loan modification, short sale or deed-in-lieu foreclosure. Additionally, any purchaser of the property as sheriff's sale (or purchaser's assignee) may take any legal action for enforcement of its right to possession of the property.

3.  The movant may join the Debtors and any trustee appointed in this case as defendants in its foreclosure action(s) irrespective of any conversion to any other chapter of the Bankruptcy Code.

The movant shall serve this order on the Debtors, any trustee and other party who entered an appearance on the motion.

WNI 19-024895
Shapiro & DeNardo, LLC
14000 Commerce Parkway, Suite B
Mount Laurel, NJ 08054
(856)793-3080
Krystin M. Kane - 171402015
Kathleen M. Magoon - 040682010
Donna L. Skilton - 013072007
Charles G. Wohlrab - 016592012
Courtney A. Martin - 098782016
Elizabeth L. Wassall - 023211995
Jeffrey Rappaport - 003431991
Kristen D. Little - 017411997
ATTORNEYS FOR WELLS FARGO BANK, N.A.

| | |
|---|---|
| IN RE: | UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY |
| JORGE L PADILLA, SR. AND MARTHA LEE PADILLA DBA MARTHA LEE PADILLA, DEBTORS | CASE NO.: 18-35404-KCF CHAPTER 7 |

## CERTIFICATION OF SERVICE

1.      I, Michael Kaiza

☐ represent the _____ in the above-captioned matter.

☒ am the secretary/paralegal for <u>Charles G. Wohlrab, Esquire</u> who represents the Secured Creditor in the above-captioned matter.

☐ am the _____ in the above case and am representing myself.

2.      On ___2/15/19___, I sent a copy of the following pleadings and/or documents to the parties listed in the chart below:

Notice of Motion to Vacate the Automatic Stay,
Certification of Mortgagee,
Proposed Order,
Certification of Service,
Supporting Documents,
Statement of No Brief,

3.      I hereby certify under penalty of perjury that the above documents were sent using the mode of service indicated.

Signature

Dated:  __2/15/19_____                    /s/ Michel Kaiza_____
                                                Michael Kaiza

| Name and Address of Party Served | Relationship of Party to the Case | Mode of Service |
|---|---|---|
| Lee Martin Perlman<br>1926 Greentree Road<br>Suite 100<br>Cherry Hill, NJ 08003 | | ☐ Hand-delivered<br>☒ Regular Mail<br>☐ Certified mail/RR<br>☐ E-mail<br>☒ Notice of Electronic Filing (NEF)<br>☐ Other _____<br>(as authorized by the court*) |
| Thomas Orr<br>Law Office of Thomas J. Orr<br>321 High Street<br>Burlington, NJ 08016 | | ☐ Hand-delivered<br>☒ Regular Mail<br>☐ Certified mail/RR<br>☐ E-mail<br>☒ Notice of Electronic Filing (NEF)<br>☐ Other _____<br>(as authorized by the court*) |
| Jorge L Padilla, Sr.,<br>724 Leeward Avenue<br>Beachwood Bor, NJ 08722<br><br>Martha Lee Padilla dba Martha Lee Padilla,<br>724 Leeward Avenue<br>Beachwood Bor, NJ 08722 | | ☐ Hand-delivered<br>☒ Regular Mail<br>☐ Certified mail/RR<br>☐ E-mail<br>☐ Notice of Electronic Filing (NEF)<br>☐ Other _____<br>(as authorized by the court*) |
| | | ☐ Hand-delivered<br>☒ Regular Mail<br>☐ Certified mail/RR<br>☐ E-mail<br>☐ Notice of Electronic Filing (NEF)<br>☐ Other _____<br>(as authorized by the court*) |

* May account for service by fax or other means as authorized by the court through the issuance of an Order Shortening Time.

WNI 19-024895
Shapiro & DeNardo, LLC
14000 Commerce Parkway, Suite B
Mount Laurel, NJ 08054
(856)793-3080
Krystin M. Kane - 171402015
Kathleen M. Magoon - 040682010
Donna L. Skilton - 013072007
Charles G. Wohlrab - 016592012
Courtney A. Martin - 098782016
Elizabeth L. Wassall - 023211995
Jeffrey Rappaport - 003431991
Kristen D. Little - 017411997
ATTORNEYS FOR WELLS FARGO BANK, N.A.

| IN RE: | UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY |
|---|---|
| JORGE L PADILLA, SR. AND MARTHA LEE PADILLA DBA MARTHA LEE PADILLA, DEBTORS | CASE NO.: 18-35404-KCF CHAPTER 7 |

## STATEMENT AS TO WHY NO BRIEF IS NECESSARY

In accordance with D.N.J. LBR 9013-1(a)(3), it is respectfully submitted that no brief is

necessary in the court's consideration of this motion, as it does not involve complex issues of

law.


Date: 2/15/19                    Signature: /s/ Charles G. Wohlrab

Charles G. Wohlrab
Shapiro & DeNardo, LLC
14000 Commerce Parkway
Suite B
Mount Laurel, NJ 08054

WNI 19-024895
Shapiro & DeNardo, LLC
14000 Commerce Parkway, Suite B
Mount Laurel, NJ 08054
(856)793-3080
Krystin M. Kane - 17142015
Charles G. Wohlrab - 016592012
ATTORNEYS FOR WELLS FARGO BANK, N.A.

| IN RE: | UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY |
|---|---|
| JORGE L PADILLA, SR. AND MARTHA LEE PADILLA dba MARTHA LEE PADILLA , DEBTORS | |
| | CASE NO.: 18-35404-KCF |
| | CHAPTER 7 |

## CERTIFICATION REGARDING CALCULATION OF AMOUNT DUE
## NOTE AND MORTGAGE DATED NOVEMBER 15, 2007

_____Vanessa Carolina Hualde_____ of full age, employed as <u>Vice President Loan Documentation</u> by <u>Wells Fargo Bank, NA</u>, hereby certifies the following:

Mortgage recorded on <u>November 26, 2007,</u> in <u>Ocean</u> County, in Book <u>13846</u> at Page 0149

Property Address:     <u>724 Leeward Avenue, Beachwood Borough, New Jersey 08722</u>

Mortgage Holder:   Wells Fargo Bank, N.A.

## 1. PAYOFF STATEMENT

| | |
|---|---|
| Unpaid Principal Balance | = $198,519.82 |
| Accrued Interest From August 1, 2018 to February 14, 2019 | = $4,519.04 |
| (Interest rate= 4.25% per year,$___n/a___ per day x __n/a__Days) | |
| Unearned interest from <u>N/A</u> to <u>N/A</u>: | = $0.00 |
| Per diem interest from <u>N/A</u> to <u>N/A</u>: | =$0.00 |
| Late Charges from <u>9/17/2018</u> to <u>12/17/2018</u> ($<u>62.82</u> / mo. X <u>4</u> mos): | =$251.28 |

Advances Through <u>February 13, 2019</u> for

| | |
|---|---|
| Escrow Advance: | = $826.11 |
| Insurance Premiums: | =$0.00 |
| Other fees: | =$0.00 |
| *Sub-Total of Advances:* | =$826.11 |
| Less Escrow Monies: | ($0.00) |
| *Net Advances:* | =$826.11 |

| | |
|---|---|
| Interest on Advances from <u>N/A</u> to <u>N/A</u> | $0.00 |
| Other Charges (Specify <u>N/A</u> ) | $0.00 |
| Less unearned interest: | ($0.00) |

**TOTAL DUE AS OF <u>February 13, 2019</u>:**     **$204,116.25**

**Date of last payment: <u>August 10, 2018</u>**

## II. EQUITY ANALYSIS (When appropriate)

| | |
|---|---|
| Estimated fair market value of real estate as of December 09, 2018 | = $245,000.00 |
| *Source: <u>BPO</u> (e.g. appraisal, tax bill/assessment, contract of sale, debtor's schedules, etc.) | |

Liens on the real estate:

| | |
|---|---|
| 1. Escrow Advance as of <u>February 13, 2019</u> | = $826.11 |
| 2. Subject Mortgage (principal and interest), as of February 13, 2019 | = $203,038.86 |
| 3. Other Mortgage (principal and interest), as of February 13, 2019 | = $0.00 |
| 4. 10% of Property Value | =$24,500.00 |
| 5. Debtors Exemption | =$47,350.00 |

| | |
|---|---|
| TOTAL LIENS | = $275,714.97 |
| APPARENT EQUITY AS OF February 13, 2019 | =$0.00 |

I certify under penalty of perjury that the above is true.

Date 02/15/2019       Signature _____

Title: <u>Vice President Loan Documentation</u>     Print Name:   Vanessa Carolina Hualde

Company Name: <u>Wells Fargo Bank, NA</u>

**Fill in this information to identify your case and this filing:**

| | |
|---|---|
| Debtor 1 | **Jorge L. Padilla, Sr.** |
| | First Name        Middle Name        Last Name |
| Debtor 2 | **Martha Lee Padilla** |
| (Spouse, if filing) | First Name        Middle Name        Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF NEW JERSEY TRENTON VICINAGE |
| Case number | |

☐ Check if this is an
amended filing

## Official Form 106A/B
# Schedule A/B: Property                                          12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:**    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.

■ Yes. Where is the property?

| 1.1 | | **What is the property?** Check all that apply | | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|---|---|
| | **724 Leeward Avenue** | ■ Single-family home | | |
| | Street address, if available, or other description | ☐ Duplex or multi-unit building | | |
| | | ☐ Condominium or cooperative | | |
| | | ☐ Manufactured or mobile home | | **Current value of the entire property?**    **Current value of the portion you own?** |
| | **Beachwood    NJ    08722-0000** | ☐ Land | | $253,000.00      $253,000.00 |
| | City      State      ZIP Code | ☐ Investment property | | |
| | | ☐ Timeshare | | **Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.** |
| | | ☐ Other _____ | | |
| | | **Who has an interest in the property?** Check one | | |
| | **Ocean** | ☐ Debtor 1 only | | |
| | County | ☐ Debtor 2 only | | |
| | | ■ Debtor 1 and Debtor 2 only | | ☐ **Check if this is community property** (see instructions) |
| | | ☐ At least one of the debtors and another | | |
| | | Other information you wish to add about this item, such as local property identification number: | | |

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.**...........................................................=>     $253,000.00

**Part 2:**    Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

# RESIDENTIAL VALUATION SERVICES (RVS) - DESKTOP APPRAISAL

**Single Unit Residential Form** **Restricted Appraisal Report**

☐ Reject/Withdraw – Check Reason Below
☐ 2-4 Units ☐ Commercial/Mixed Use ☐ Zoned Commercial/Industrial ☐ Acreage (5+) ☐ Mobile/Mfg. Home ☐ Vacant Land
☐ Co-Op ☐ No MLS Coverage ☐ Cannot produce a credible value ☐ Other

## SUBJECT and CLIENT INFORMATION

Property Address 724 LEEWARD AVE   Unit # N/A   City BEACHWOOD   State NJ   Zip Code 08722
County OCEAN   Owner PADILLA   Tax ID #/APN# ████████

Property Rights Appraised ☒ Fee Simple ☐ Leasehold
Property Type ☒ SFR/PUD ☐ Condo ☐ Attached ☒ Detached
Assignment Type ☒ Loan Service/Default ☐ Other
Client WELLS FARGO BANK, NA

## MARKET AREA ANALYSIS / HIGHEST and BEST USE

**One Unit Housing Trends**
Property Values ☐ Increasing ☒ Stable ☐ Declining
Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply
Marketing Time ☒ Under 3 mths ☐ 3-6 mths ☐ Over 6 mths

Is the Highest and Best Use of the subject property as improved the present use?
☒ Yes ☐ No
If no, describe.

**Market Comments**
IN THE SUBJECT'S MARKET AREA AND PRICE RANGE OF $150K - $350K, THERE HAVE BEEN 121 CLOSED SALES IN THE PAST 12 MONTHS INDICATING AN ABSORPTION RATE OF 10.1 SALES PER MONTH. THE SUBJECT'S MARKET HAS 19 PENDING SALES AND 39 LISTINGS. THIS INDICATES THE MARKET IS IN BALANCE WITH A 3.9 MONTH SUPPLY. REO SALES/LISTING (13 OF 121 SALES/6 OF 39 LISTINGS) AND SHORT SALES/LISTING (2 OF 121 SALES/2 OF 39 LISTINGS).

## SALES COMPARISON ANALYSIS

| Property Features | Subject | Comparable #1 | Comparable #2 | Comparable #3 |
|---|---|---|---|---|
| Address | 724 LEEWARD AVE, N/A BEACHWOOD | 1137 WINDWARD AVE BEACHWOOD | 1044 BEACH AVE BEACHWOOD | 616 BEACH AVE BEACHWOOD |
| Proximity | | 0.92 miles SE | 0.46 miles SW | 0.26 miles SE |
| Sale Price | $ 245,000E | $ 230000 | $ 249900 | $ 301000 |
| Sale Price/Gross Liv. Area | $ 147.59 /sq. ft. | $ 126.10 /sq. ft. | $ 155.99 /sq. ft. | $ 163.59 /sq. ft. |
| Data Sources | MORRMLS/REALIST | MORRMLS/REALIST | MORRMLS/REALIST | MORRMLS/REALIST |
| MLS# / DOM | N/A N/A | 21823347 35 | 21814421 8 | 21826492 12 |
| List Price | $ N/A | $ 243900 | $ 249900 | $ 299000 |
| Contract Date/Close Date | N/A N/A | 07/18/2018 08/28/2018 | 04/25/2018 07/16/2018 | 07/15/2018 09/14/2018 |
| Location | RESIDENTIAL/AVG | ☐ Superior ☒ Similar ☐ Inferior | ☐ Superior ☒ Similar ☐ Inferior | ☐ Superior ☒ Similar ☐ Inferior |
| Site Area | 12001SF | 8002SF | 8002SF | 8002SF |
| View | RESIDENTIAL/AVG | ☐ Superior ☒ Similar ☐ Inferior | ☐ Superior ☒ Similar ☐ Inferior | ☐ Superior ☒ Similar ☐ Inferior |
| Year Built | 1970 | 1978 | 1970 | 1989 |
| Condition | AVERAGE | ☐ Superior ☒ Similar ☐ Inferior | ☒ Superior ☐ Similar ☐ Inferior | ☒ Superior ☐ Similar ☐ Inferior |
| Above Grade | Total 7 Bdrms 4 FB/HB 2 0 | Total 9 Bdrms 4 FB/HB 2 0 | Total 9 Bdrms 4 FB/HB 1 1 | Total 9 Bdrms 4 FB/HB 2 0 |
| Room Count | 7 4 2 0 | 9 4 2 0 | 9 4 1 1 | 9 4 2 0 |
| Gross Living Area (GLA) | 1660 sq. ft. | 1824 sq. ft. | 1602 sq. ft. | 1840 sq. ft. |
| Basement | FULL | ☐ Yes ☒ No | ☐ Yes ☒ No | ☒ Yes ☐ No |
| If Basement (Describe Subj.) | PART FINISHED | ☐ Superior ☐ Similar ☒ Inferior | ☐ Superior ☐ Similar ☒ Inferior | ☐ Superior ☒ Similar ☐ Inferior |
| Garage/Carport | DRIVEWAY | ☒ Superior ☐ Similar ☐ Inferior | ☒ Superior ☐ Similar ☐ Inferior | ☒ Superior ☐ Similar ☐ Inferior |
| Pool | POOL | ☐ Yes ☒ No | ☐ Yes ☒ No | ☐ Yes ☒ No |
| HOA Dues (Condo only) | $ N/A | $ N/A | $ N/A | $ N/A |
| REO / Short Sale / No | NO | ☐ REO ☐ Short Sale ☒ No | ☐ REO ☐ Short Sale ☒ No | ☐ REO ☐ Short Sale ☒ No |
| Subdivision/Development | BEACHWOOD | ☐ Superior ☒ Similar ☐ Inferior | ☐ Superior ☒ Similar ☐ Inferior | ☐ Superior ☒ Similar ☐ Inferior |
| DESIGN/STYLE | CAPE | BILEVEL | RANCH | CAPE |
| **Overall Comparison to the Subject Property** | | ☐ Superior ☒ Similar ☐ Inferior | ☐ Superior ☒ Similar ☐ Inferior | ☒ Superior ☐ Similar ☐ Inferior |

## LISTING and TRANSFER HISTORY

The Appraiser has researched and analyzed the listing history of the subject property for the last 12 months.
Subject Property ☐ Currently Listed ☐ Listed in the past 12 months ☒ Not Listed in past 12 months
**Listing History** List Date: N/A   List Price: $ N/A   Days on Market (DOM): N/A

The Appraiser has researched and analyzed a 3 year transfer history of the subject property/1 year history for the comparables.

| Transfer History | Subject | Comp. 1 | Comp. 2 | Comp. 3 |
|---|---|---|---|---|
| Date/Amount | N/A $ N/A | N/A $ N/A | N/A $ N/A | N/A $ N/A |
| | $ | $ | $ | $ |

(Use the Summary section below if additional room is needed.)

## SUMMARY

COMMENTS (Including reconciliation of sales comparison data, reasonable exposure time, and comments on listing and transfer history(s).)

SEE ATTACHED ADDENDUM

Opinion of Market Value $ 245,000   as of 12/09/2018

## RESIDENTIAL VALUATION SERVICES (RVS) - DESKTOP APPRAISAL

**Single Unit Residential Form**  **Restricted Appraisal Report**

### SALES COMPARISON ANALYSIS

| Property Features | Subject | Comparable #4 | Comparable #5 | Comparable #6 |
|---|---|---|---|---|
| Address | 724 LEEWARD AVE, N/A<br>BEACHWOOD | 318 CAPSTAN AVE<br>BEACHWOOD | 333 WINDWARD AVE<br>BEACHWOOD | |
| Proximity | | 0.92 miles NE | 0.89 miles SE | |
| Sale Price | $ 245,000E | $ 220000 | $ 230,000L | $ |
| Sale Price/Gross Liv. Area | $ 147.59 /sq. ft. | $ 149.05 /sq. ft. | $ 134.19 /sq. ft. | $ /sq. ft. |
| Data Sources | MORRMLS/REALIST | MORRMLS/REALIST | MORRMLS/REALIST | |
| MLS# / DOM | N/A N/A | 21808948 84 | 21841628 47 | |
| List Price | $ N/A | $ 220000 | $ 230000 | $ |
| Contract Date/Close Date | N/A N/A | 05/31/2018 07/20/2018 | N/A N/A | |
| Location | RESIDENTIAL/AVG | ☐Superior ☒Similar ☐Inferior | ☐Superior ☒Similar ☐Inferior | ☐Superior ☐Similar ☐Inferior |
| Site Area | 12001SF | 8002SF | 8002SF | |
| View | RESIDENTIAL/AVG | ☐Superior ☒Similar ☐Inferior | ☐Superior ☒Similar ☐Inferior | ☐Superior ☐Similar ☐Inferior |
| Year Built | 1970 | 1920 | 8002 | |
| Condition | AVERAGE | ☐Superior ☒Similar ☐Inferior | ☐Superior ☐Similar ☒Inferior | ☐Superior ☐Similar ☐Inferior |
| Above Grade | Total Bdrms FB/HB | Total Bdrms FB/HB | Total Bdrms FB/HB | Total Bdrms FB/HB |
| Room Count | 7 4 2 0 | 7 3 2 0 | 8 3 1 1 | |
| Gross Living Area (GLA) | 1660 sq. ft. | 1476 sq. ft. | 1714 sq. ft. | sq. ft. |
| Basement | FULL | ☐Yes ☒No | ☒Yes ☐No | ☐Yes ☐No |
| If Basement (Describe Subj.) | PART FINISHED | ☐Superior ☐Similar ☒Inferior | ☐Superior ☐Similar ☒Inferior | ☐Superior ☐Similar ☐Inferior |
| Garage/Carport | DRIVEWAY | ☒Superior ☐Similar ☐Inferior | ☒Superior ☐Similar ☐Inferior | ☐Superior ☐Similar ☐Inferior |
| Pool | POOL | ☐Yes ☒No | ☐Yes ☒No | ☐Yes ☐No |
| HOA Dues (Condo only) | $ N/A | $ N/A | $ N/A | $ |
| REO / Short Sale / No | NO | ☐REO ☐Short Sale ☒No | ☐REO ☐Short Sale ☒No | ☐REO ☐Short Sale ☐No |
| Subdivision/Development | BEACHWOOD | ☐Superior ☒Similar ☐Inferior | ☐Superior ☒Similar ☐Inferior | ☐Superior ☐Similar ☐Inferior |
| DESIGN/STYLE | CAPE | RANCH | BILEVEL | |
| | | | | |
| **Overall Comparison to the Subject Property** | | ☐Superior ☐Similar ☒Inferior | ☐Superior ☐Similar ☒Inferior | ☐Superior ☐Similar ☐Inferior |

### TRANSFER HISTORY

The Appraiser has researched and analyzed a 3 year transfer history of the subject property/1 year history for the comparables.

| Transfer History | Subject | Comp. 4 | Comp. 5 | Comp. 6 |
|---|---|---|---|---|
| Date/Amount | N/A $ N/A<br>$ | N/A $ N/A<br>$ | N/A $ N/A<br>$ | $<br>$ |

This form is designed to report an appraisal of a one-unit residential property. This form cannot be used to appraise the following types of properties: 2-4 residential units, commercial/mixed use properties, commercial/industrial zoned properties, mobile/manufactured homes, cooperative units, vacant land, properties with more than 5 acres, and properties with other than a Fee Simple or Leasehold Interest. This form can only be completed by an appraiser who has MLS (Multiple Listing Service) data covering the subject's market area. The appraiser may consider other data sources available in addition to MLS and should use the data source(s) deemed most reliable by the appraiser.

This appraisal report is subject to the following Scope of Work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications are not permitted without express authorization by the client. The appraiser may expand the Scope of Work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Additional certifications that do not constitute material alterations to this appraisal report are permitted.

**PURPOSE:**

The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report based on a sales comparison analysis solely for the use by the client identified in the report.

**INTENDED USE:**

The intended use of this appraisal report is for internal asset review and/or loan servicing (including default) by the client. The report is not intended for any other use.

**INTENDED USER:**

The intended user of this report is limited solely to the identified client. This is a Restricted Appraisal Report and the rationale for how the appraiser arrived at the opinions and conclusions set forth in the report may not be understood properly without additional information in the appraiser's workfile.

**DEFINITION OF MARKET VALUE:**

Market value means the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

(1) Buyer and seller are typically motivated;

(2) Both parties are well informed or well advised, and acting in what they consider their own best interests;

(3) A reasonable time is allowed for exposure in the open market;

(4) Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and

(5) The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

Source of Definition: 12 C.F.R., part 34, subpart C-Appraisals, 34.42 Definitions (F)

## RESIDENTIAL VALUATION SERVICES (RVS) - DESKTOP APPRAISAL

**Single Unit Residential Form**                                   **Restricted Appraisal Report**

**SCOPE OF WORK:**

The Scope of Work for the appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the cited definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) identify the characteristics of the subject property that are relevant to the purpose and intended use of the appraisal, (2) research, verify, and analyze data from reliable public and/or private sources, (3) have Multiple Listing Service (MLS) for the subject's market area, (4) include a minimum of 3 closed comparable sales and at least 1 comparable active listing or pending sale, (5) report his or her analysis, opinions, conclusions, and rationale for conclusions in this appraisal report.

Unless otherwise noted, the appraiser has not physically inspected the subject property. In developing this appraisal, the appraiser has incorporated only the Sales Comparison Approach. The appraiser has excluded the Cost and Income Approaches to value, due to being inapplicable given the limited scope of the appraisal. The appraiser has determined that his or her appraisal process is not so limited that the results of the assignment are no longer credible, and the client agrees that the limited scope of analysis is appropriate given the intended use. The appraiser was able to obtain sufficient information about the subject's physical characteristics (such as room count, gross living area (GLA), site size, etc.) from his or her own research using public and private data sources deemed reliable to develop a credible opinion of value. These sources include, but are not limited to, tax and assessment records, Multiple Listing Service(s) (MLS), aerial mapping programs, prior appraisal files, etc.

**EXTRAORDINARY ASSUMPTIONS:**

At the client's request, and unless otherwise noted in the report, the following Extraordinary Assumptions have been made: (1) The subject is considered to be in average overall condition, and (2) there are no adverse environmental conditions (hazardous wastes, toxic substances, etc.) in, on or in the immediate vicinity of the subject property, and (3) the subject's projected use is not intended to change, and (4) there are no significant discrepancies between the subject's public record information or other data source(s) and the existing site or improvements. The use of any Extraordinary Assumptions might have affected the assignment results.

**APPRAISER'S CERTIFICATION**
The appraiser certifies and agrees that to the best of his or her knowledge and belief:

1. The facts and data reported by the appraiser and used in the appraisal process are true and correct.
2. The analyses, opinions, and conclusions in this report are limited only by the assumptions and limiting conditions stated in this report and are my personal, impartial, and unbiased professional analysis, opinions, and conclusions.
3. Unless otherwise specified in this report, I have no present or prospective interest in the property that is the subject of the work under review and, unless otherwise specified in this report, no personal interest with respect to the parties involved.
4. Unless otherwise specified in this report, I have performed no other services, as an appraiser or in any other capacity, regarding the property that is the subject of the work under review within the three-year period immediately preceding acceptance of this assignment.
5. I have no bias with respect to the real property that is the subject of this report or to the parties involved with this assignment.
6. My engagement in this assignment was not contingent upon developing or reporting predetermined results.
7. My compensation for completing this assignment is not contingent upon the development or reporting of predetermined value or direction in value that favors the clause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
8. My analyses, opinions, and conclusions were developed and this report was prepared in conformity with the Uniform Standards of Professional Appraisal Practice (USPAP).
9. I did not inspect the interior or exterior of the subject real property of the report unless otherwise noted.
10. No one provided significant real property appraisal assistance to the person signing this report unless otherwise noted. Any individuals who provided significant real property appraisal assistance are identified in an amended certification along with a summary of the extent of the assistance provided in the report.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions and to such other specific and limiting conditions as set forth in the report.

1. The appraiser assumes no responsibility for matters of a legal nature affecting the real property that is the subject of this or the title thereto, nor does the appraiser render any opinions as to the title, which is assumed to be good and marketable. The property is appraised on the basis of it being under responsible ownership.
2. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made before hand, or as otherwise required by law.
3. The appraiser has noted in the appraisal report any adverse conditions observed during the analysis of the subject real property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the real property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the real property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, expressed or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the real property.
4. Information, estimates, and opinions furnished to the appraiser, and contained in the report, were obtained from sources considered reliable and believed to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.
5. Disclosure of the contents of the appraisal report is governed by the Uniform Standards of Professional Appraisal Practice (USPAP).
6. Neither all, nor any part of the content of the report, or copy thereof (including the conclusions of the appraisal, the identity of the appraiser, professional designations, reference to professional appraisal organizations, or the firm with which the appraiser is connected) shall be used for any purposes by anyone but the client specified in the report.
7. No change of any item in the report shall be made by anyone other than the appraiser and the appraiser shall have no responsibility for any such unauthorized change.

APPRAISER

Signature:

Name: JOSEPH P. LUCIANO JR.

Company Name: JOSEPH P. LUCIANO

Company Address: 1358 HOOPER AVE, SUITE 139

TOMS RIVER          NJ     08753-2882

Date of Signature and Report: 12/09/2018

State Certification #: 42RG00195900

or State License #:

State: NJ

Expiration Date of Certification or License: 12/31/2019

ADDRESS OF PROPERTY APPRAISED

724 LEEWARD AVE

BEACHWOOD                    NJ     08722

APPRAISED VALUE OF SUBJECT PROPERTY $ 245,000

EFFECTIVE DATE OF APPRAISAL          12/09/2018

CLIENT

Name: WELLS FARGO BANK, NA

Company Address: 18700 NW WALKER RD #92 1ST FLOOR

BEAVERTON          OR     97006

# TEXT ADDENDUM

| | |
|---|---|
| Borrower/Client | |
| Property Address | 724 LEEWARD AVE |
| City | BEACHWOOD |
| County | OCEAN |
| State | NJ |
| Zip Code | 08722 |
| Lender | WELLS FARGO BANK, NA |

Final Reconciliation Comments
COMPS 1-4 ARE THE BEST OVERALL SIMILAR SALES PER MLS.

SALE #1 WAS USED AS THE PRIMARY VALUE INDICATOR DUE TO BEST OVERALL DEGREE OF COMPARABILITY TO THE SUBJECT IN MOST MAJOR ELEMENTS OF COMPARISON; WITH SALES #2 AND #3 PROVIDING GOOD SUPPORT.

THE LACK OF RECENT SALES OF MORE SUITABLE COMPARABLES IN THE LOCAL MARKET AREA REQUIRES THE USE OF SALES #1, #2, #3 AND #4 WHICH EXCEED THE 120 DAY CONTRACT GUIDELINE.

BASED ON THE OPINION OF MARKET VALUE, THE SUBJECT'S REASONABLE EXPOSURE TIME IS 1-3 MONTHS.

I HAVE PERFORMED NO SERVICES, AS AN APPRAISER OR IN ANY OTHER CAPACITY, REGARDING THE PROPERTY THAT IS THE SUBJECT OF THIS REPORT WITHIN THE THREE YEAR PERIOD IMMEDIATELY PRECEDING ACCEPTANCE OF THIS ASSIGNMENT.

# LOCATION MAP ADDENDUM

File #

| | |
|---|---|
| Borrower/Client | |
| Property Address | 724 LEEWARD AVE |
| City BEACHWOOD | County OCEAN | State NJ | Zip Code 08722 |
| Lender WELLS FARGO BANK, NA | |



# NOTE

November 15, 2007        FREEHOLD        New Jersey

[Date]               [City]             [State]

724 Leeward Avenue, Beachwood Borough, NJ 08722

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 248,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Wachovia Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.500 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on January, 2008 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on December 1, 2037 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 1100 Corporate Center Drive, Raleigh, NC 27607
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,567.53

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**MULTISTATE FIXED RATE NOTE**-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Padilla

-5N (0207)      Form 3200 1/01

VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 3      Initials:



## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  Fifteen  calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  5.000  % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.





Padilla

Form 3200 1/01

Initials:

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

    If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Jorge L Padilla                 -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

PAY TO THE ORDER OF
WACHOVIA BANK, NATIONAL ASSOCIATION

WITHOUT RECOURSE
WACHOVIA MORTGAGE CORPORATION
BY: _____
Assistant Vice President
KAREN DAVIS

PAY TO THE ORDER OF

_____ (Seal)
                                -Borrower

WITHOUT RECOURSE          [Sign Original Only]
WACHOVIA BANK, NATIONAL ASSOCIATION
BY: _____
Assistant Vice President
KAREN DAVIS          Padilla

-5N (0207)          Page 3 of 3          Form 3200 1/01

Return To:
Wachovia Mortgage Corporation

1100 Corporate Center Drive,
Raleigh, NC 27607

Prepared By:
Senaj Nasit

1 Jefferson Square
Waterbury, CT 06706

INSTR # 2007151733
OR BK 13846 PG 0149
RECORDED 11/26/2007 09:52:48 AM
CARL W. BLOCK, COUNTY CLERK
OCEAN COUNTY, NEW JERSEY

——————————— [Space Above This Line For Recording Data] ———————————

# MORTGAGE

MIN ▮▮▮▮▮▮▮▮▮▮▮

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated     November 15, 2007                ,
together with all Riders to this document.
**(B) "Borrower"** is Jorge L . Padilla and Martha L. Padilla, Husband And Wife

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

Padilla

NEW JERSEY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3031 1/01

VMP ®-6A(NJ) (0512)
Page 1 of 15          Initials:
VMP Mortgage Solutions, Inc.

**(D) "Lender"** is Wachovia Mortgage Corporation

Lender is a Corporation
organized and existing under the laws of North Carolina
Lender's address is 1100 Corporate Center Drive, Raleigh, NC 27607

**(E) "Note"** means the promissory note signed by Borrower and dated    November 15, 2007
The Note states that Borrower owes Lender Two Hundred Forty Eight Thousand

Dollars
(U.S. $248,000.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than    December 1, 2037

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.





Padilla

Initials:

-6A(NJ) (0512)

Page 2 of 15

Form 3031 1/01

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For these purposes, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the County of Ocean :

[Type of Recording Jurisdiction]   [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED

Property Account Number:                          which currently has the address of
724 Leeward Avenue                                                        [Street]
Beachwood Borough                           [City], New Jersey 08722-          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

████████                                                                    ████Padilla

 -6A(NJ) (0512)              Page 3 of 15         Initials: [signature MLP]        Form 3031 1/01

Title No. 

# S C H E D U L E  A-4
# D E S C R I P T I O N

ALL that certain tract, lot and parcel of land lying and being in the Borough of Beachwood, County of Ocean and State of New Jersey, being more particularly described as follows:

BEING known and designated as Lots 43, 44, 45, 46, 47 & 48 in Block C11, Plat Ca, Map 10, as delineated on the Map of "Beachwood, Ocean County, New Jersey", filed in the office of the County Clerk of the County of Ocean, which map is a sub-division of lands shown on a map entitled "Boundary line Map of 2000 Acre" tract near Toms River, New Jersey, Sept 12, 1914 to be called Beachwood" surveyed by A.D. Mickerson, C.E. and filed in the Ocean County Clerk's Office November 11, 1914.

BEGINNING at a point in the Northwesterly line of Leeward Avenue (33 feet wide), said point being distant 240.00 feet Northeasterly from the intersection formed by the Northwesterly line of Leeward Avenue with the Northeasterly line of Maple Street (33 feet wide) and from said beginning point running; thence

1. North 45 degrees 29 minutes 30 seconds West, 100.00 feet to a point; thence

2. North 44 degrees 30 minutes 30 seconds West, 120.00 feet to a point; thence

3. South 45 degrees 29 minutes 30 seconds East, 100.00 feet to a point in the Northwesterly line of Leeward Avenue; thence

4. Along the Northeasterly line of Leeward Avenue, South 44 degrees 30 minutes 30 seconds West, 120.00 feet to the point and place of BEGINNING.

**Note for Information Only:**
Also known as Lot(s) 11, Block 3.11 on the Tax Map of the Borough of Beachwood, in the County of Ocean, also known as 724 Leeward Avenue.



TRANSNATION TITLE INSURANCE COMPANY

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. If Lender accepts such payments, it shall apply such payments at the time such payments are accepted. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

Padilla

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the





Initials:

Padilla

Form 3031 1/01

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with





Padilla

Initials:

Form 3031 1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable





Initials:

Padilla

Form 3031 1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**





**(b)** Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.





Padilla

Initials

Form 3031 1/01

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.




**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the





Initials:

Padilla

Form 3031 1/01

new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.





Padilla

Initials

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at Section 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.





Initials

Padilla

Form 3031 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____        _____ (Seal)
                                                Jorge L Padilla                -Borrower

_____        _____ (Seal)
                                                Martha L. Padilla              -Borrower

_____ (Seal)            _____ (Seal)
                    -Borrower                                        -Borrower

_____ (Seal)            _____ (Seal)
                    -Borrower                                        -Borrower

_____ (Seal)            _____ (Seal)
                    -Borrower                                        -Borrower



Initials: 

Padilla

Form 3031 1/01

**STATE OF NEW JERSEY,** ~~Monmouth~~ Ocean                    **County ss:**

On this 15th day of November, 2007 , before me, the subscriber, personally appeared

Jorge L. + Martha L. Padilla

who, I am satisfied, is/are the person(s) named in and who executed the within instrument, and thereupon acknowledged that he/she/they signed, sealed and delivered the same as his/her/their act and deed, for the purposes therein expressed.

_____
Notary Public          KOREN E. GRABER
A Notary Public of New Jersey
My Commission Expires April 6, 20 09

Padilla

Initials:



# Ocean County
# Document Summary Sheet

OCEAN COUNTY CLERK

PO BOX 2191

COURTHOUSE

TOMS RIVER NJ 08754

INSTR # 2018098576
OR BK 17261 PG 1839
RECORDED 10/09/2018 08:37:18 AM
SCOTT M. COLABELLA, COUNTY CLERK
OCEAN COUNTY, NEW JERSEY
RECORDING FEES 42.00
(*INCLUDES $2 E-RECORD CONVENIENCE FEE)
**Official Use Only**

| Transaction Identification Number | | 3598974 | 3080841 |
|---|---|---|---|
| **Submission Date** *(mm/dd/yyyy)* | 10/05/2018 | **Return Address** *(for recorded documents)* | |
| **No. of Pages** *(excluding Summary Sheet)* | 1 | WELLS FARGO BANK, N.A. | |
| **Recording Fee** *(excluding transfer tax)* *(Convenience Charge of $2.00 included)* | $42.00 | 1000 BLUE GENTIAN RD SUITE 200 | |
| **Realty Transfer Tax** | $0.00 | EAGAN, MN 55121 | |
| **Total Amount** | $42.00 | | |

| **Document Type** | ASSIGNMENT/MORTGAGE |
|---|---|

**Municipal Codes**

BEACHWOOD BORO                    5

**Batch Type**    L2 - LEVEL 2 (WITH IMAGES)

### Bar Code(s)

### Additional Information (Official Use Only)



*** DO NOT REMOVE THIS PAGE.**
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF OCEAN COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*



# Ocean County
# Document Summary Sheet

| | | |
|---|---|---|
| **Type** | ASSIGNMENT/MORTGAGE | |
| **Consideration** | | |
| **Submitted By** | WELLS FARGO BANK, N.A. (CSC/INGEO SYSTEMS INC) | |
| **Document Date** | 10/05/2018 | |
| **Reference Info** | | |

| Book ID | Book | Beginning Page | Instrument No. | Recorded/File Date |
|---|---|---|---|---|
| OR | 13846 | 0149 | 2007151733 | |

**ASSIGNMENT/MORTGAGE**

| MORTGAGOR | Name | Address |
|---|---|---|
| | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC | |
| | WACHOVIA MORTGAGE CORP | |
| | JORGE L PADILLA | |
| | MARTHA L PADILLA | |

| ASSIGNEE AND BORROWE | Name | Address |
|---|---|---|
| | WELLS FARGO BANK NA | |

| Parcel Info | | | | | |
|---|---|---|---|---|---|
| Property Type | Tax Dist. | Block | Lot | Qualifier | Municipality |
| | 5 | | | | 5 |



*** DO NOT REMOVE THIS PAGE.**
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF OCEAN COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

CFN 2018098576 O DOC_TYPE ASSN MTG BK 17261 PG 1840 PAGE 2 OF 3

***Send All Notices to Assignee***

RECORDING REQUESTED BY:
**WELLS FARGO BANK, N.A.**
**1000 BLUE GENTIAN RD**
**SUITE 200**
**EAGAN, MN 55121**

WHEN RECORDED MAIL TO:
**WELLS FARGO BANK, N.A.**
**MAC: N9289-016**
**PO BOX 1629**
**EAGAN, MN 55121-4400**
**ATTN: ASSIGNMENT TEAM**

## ASSIGNMENT OF MORTGAGE

MIN: ███████████ MERS Phone #: **888-679-6377**

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WACHOVIA MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS , P.O. BOX 2026 , FLINT, MI 48501-2026** , by these presents does convey, assign, transfer and set over to **WELLS FARGO BANK, NA , 1 HOME CAMPUS , DES MOINES, IA 50328** , the following described Mortgage, with all interest, all liens, and any rights due or to become due thereon. Said Mortgage for **$248000.00** , is recorded in the State of **NEW JERSEY** , County of **Ocean** Official Records, dated **11/15/2007** and recorded on **11/26/2007** , as Instrument No. **2007151733** in Book No. **13846** , at Page No. **0149**
Original Mortgagor: **JORGE L. PADILLA AND MARTHA L. PADILLA, HUSBAND AND WIFE**
Original Mortgagee: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WACHOVIA MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS**
Property Address: **724 LEEWARD AVENUE BEACHWOOD BOROUGH, NJ 08722**
Date: **10/05/2018**

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,**
**AS NOMINEE FOR WACHOVIA MORTGAGE**
**CORPORATION, ITS SUCCESSORS AND ASSIGNS**
By:

_____

CARLA M. NAUGHTON, Assistant Secretary

STATE OF MN
COUNTY OF Dakota } S.S.

On **10/05/2018** before me, **MICHELLE ERIN WIHREN** , a Notary Public, personally appeared **CARLA M. NAUGHTON** , Assistant Secretary of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WACHOVIA MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS** personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

_____
MICHELLE ERIN WIHREN, Notary Public
Commission #: 20307590
My Commission Expires: 01/31/2021

> MICHELLE ERIN WIHREN
> NOTARY PUBLIC-MINNESOTA
> MY COMMISSION EXPIRES 01/31/2021

c2577972

